# EXHIBIT 3



**EPSTEIN
BECKER
GREEN**

Attorneys at Law

James J. Oh
t  312.499.1470
f  312.827.9525
JOh@ebglaw.com

November 7, 2025

**VIA EMAIL**

Isaac C. Belfer
Trial Attorney
Enforcement & Affirmative Litigation Branch
U.S. Department of Justice
450 5th Street, NW, Suite 6400-South
Washington, DC 20044-0386
Isaac.C.Belfer@usdoj.gov

      Re:    ***American Academy of Pediatrics, et al. v. Kennedy, et al.:*
**Production of the Administrative Record**

Dear Isaac:

      At the October 30, 2025 hearing on the motion to lift the stay, Judge Murphy ordered "Defendants to file a status report by 11/12/2025 re the compilation time line for disclosing the administrative record to plaintiffs." (ECF # 134). I offer the following for your consideration before you submit Defendants' report to the Court.

      As you know, Plaintiffs filed a Third Amended Complaint two days ago on November 5, 2025 (ECF # 139) (the "TAC"). In the TAC, Plaintiffs challenge three Final Agency Actions:

(i) designation of the Covid-19 vaccine for children as Shared Clinical Decision Making ("the First SCDM Decision");

(ii) the designation of the Covid-19 vaccine for adults as SCDM (the "Second SCDM Decision"); and

(iii) the Secretary's reconstitution of the Advisory Committee on Immunization Practices (the "ACIP Claim").

Isaac C. Belfer
November 7, 2025
Page 2

## The Administrative Record ("AR") on the SCDM Decisions

The complaints that Plaintiffs filed before the TAC challenged one Final Agency Action—the Secretarial Directive dated May 19, 2025 ("Directive"), which instructed the Centers for Disease Control and Prevention ("CDC") to remove the recommendations that pregnant women and children receive the Covid-19 vaccine. As you know, even though the Directive instructed the CDC to remove entirely the Covid-19 vaccine recommendation for children, the CDC's immunization schedule was changed, not by removing that recommendation, but by changing the designation of the childhood Covid-19 vaccine to SCDM. Thus, the AR on the First SCDM Decision should include documents that influenced the issuance of the Directive, the removal of the Covid-19 recommendation for pregnant people, and the designation of the Covid-19 vaccine for children as SCDM. This includes but is not limited to documents pertaining to evidence, decision-making, or instructions.

At the July 31, 2025 Case Management Conference ("CMC"), Judge Young understood the initial challenge to the Directive to be a "discrete determination" and that he "wouldn't think that the administrative record in support of that changed recommendation is extensive or hard to ferret out." (Transcript of 7/31 CMC at 7:23-8:5). At the CMC, you indicated that "the agency thinks that it can compile the records within 8 weeks." (*Id*. at 8:25-9:1). A reason that you gave the eight week number was that "the administrative record will probably include documents from all of those subagencies. And so that's what takes time, to recover records from three different subagencies,[1] and maybe other offices." (Id. at 8:18-23). Judge Young asked you if the record could be produced by September 26, and your response was "That works for us, your Honor." (*Id*. at 9:6-8). At the hearing on the Motion to Lift Stay on October 30, Judge Murphy asked you the status of producing the AR on the Directive, and you stated: "I think some work has been done, but there is more work to do. I don't know exactly how much more." (Transcript of 10/30 Hearing at 18:17-18).

Plaintiffs believe that the AR on the Directive could have been compiled by now, seven weeks after the government said it could produce the AR, and request that it be produced immediately, *i.e.*, next week (with the possible exception of electronically-stored information ("ESI") such as emails and text messages discussed in the next paragraph). By the time your status report is due next Wednesday, it will be 15 weeks after the CMC when you indicated you needed eight weeks to produce the AR on the Directive. Further, the TAC dropped NIH and FDA as Defendants, so there now is only one subagency to collect documents from. And since there was no ACIP meeting prior to the Directive to vote either on removing the Covid-19 recommendation for pregnant people, recommending the removal of the Covid-19 vaccine for children from the CDC's schedules, or changing the designation of the Covid-19 vaccine for children to SCDM, the burden cannot be great to collect documents from the CDC that "might have influenced the agency's decision, whether directly or indirectly." *Forest County Potawatomi Community v.*

---

[1] The operative complaint at that time named Health and Human Services ("HHS"), the Food and Drug Administration ("FDA"), the National Institutes of Health ("NIH"), and the CDC.

Isaac C. Belfer
November 7, 2025
Page 3

*United States,* 270 F.Supp. 3d 174, 178 (D.D.C. 2017) (administrative record should include materials considered directly or indirectly by the agency).

In this age of electronic communication, Plaintiffs expect that there are emails and text messages that influenced the decision makers on both SCDM decisions challenged here. *See Bimini Superfast Operations LLC v. Winkowski*, 994 F.Supp.2d 103, 106 (D.D.C. 2014) (holding emails were properly included in administrative record as documents that were directly or indirectly considered in decision making). Since the ACIP and CDC leadership such as Dr. Susan Monarez and Dr. Demetre Daskalakis were not consulted about the Directive (see TAC ¶¶ 64-72), Plaintiffs are entitled to know whom the Secretary consulted with and the evidence relied upon to issue the Directive. Indeed, as Dr. Daskalakis stated in his resignation letter, he asked the Secretary for the "data analyses that supported" the Directive, but nothing was shared with him "despite my respectful requests to HHS and other leadership." (TAC ¶ 72). Presumably, Dr. Daskalakis made those requests in writing by email, since, as Dr, Daskalakis has stated: "no CDC subject matter expert from my Center has ever briefed the Secretary. I am not sure who the Secretary is listening to, but it is quite certainly not to us." Accordingly, Plaintiffs expect to see in the AR on the First SCDM Decision, at a minimum: (a) Dr. Daskalakis' requests for data analyses; (b) the electronic communications about the Directive from anyone involved in that decision; (c) data analyses and the "good science"[2] relied on to make the First SCDM Decision. If Defendants have yet to begin collecting ESI from those who were involved in that decision, then please let me know immediately so that we can schedule a call to discuss an ESI protocol that would ensure the forensically-sound collection and production of ESI. For efficiency sake, I will have an ESI vendor on the call with me.

ESI may be a reason that Defendants cannot produce the *entire* AR on the First SCDM Decision next week. But, in the meantime, other documents that were directly or indirectly considered with regard to the First SCDM Decision – such as data analyses, studies, articles, and PowerPoint presentations – should be produced now. *See Ammex, Inc. v. U.S.*, 62 F.Supp.2d 1148, 1156 (Ct. Int'l Trade 1999) ("If the relevant agency decisionmakers considered, even indirectly, any internal guidelines, memoranda, manuals or other materials in reaching its decision, those materials should be included in the record."). After all, on July 31, you told Judge Young that it was feasible to do so in eight weeks, *i.e.*, by September 26, and we are now seven weeks past that date.

Like the First SDCM Decision, it should not be difficult collecting and producing the AR on the Second SCDM Decision. On September 18, the ACIP voted in favor of the following proposition:

> It is the sense of the committee that in conversations with patients before COVID-19 vaccination, authorized healthcare providers

---

[2] In the May 27 video posted on the Secretary's official X account in which the Secretary announced the Directive, NIH Director Jay Bhattacharya stated that the Directive was supported by "good science." The AR should include the "good science" that Director Bhattacharya was referring to.

> discuss the risks and benefits of the vaccination for the individual patient. The discussion should consider known risk factors for severe outcomes from COVID-19, such as age, prior infections, immunosuppression, and certain comorbidities identified by the CDC, and include a discussion of the potential benefits and risks of vaccination and related uncertainties, especially those outlined in the vaccine information statement, as part of informed consent.

On October 6, Defendant O'Neill adopted this recommendation of the ACIP, and the CDC's immunization schedule for adults under 65 was changed to SCDM. There are ten business days between September 18 and October 6. One would think that the documents that Defendant O'Neill reviewed in that short span to make his October 6 decision are readily identifiable and producible. Of course, if he reviewed relevant documents related to the Second SCDM Decision before the September 18 vote, those documents should be included in the AR on the Second SCDM Decision as well.

### **The Administrative Record on the ACIP Claim**

Plaintiffs recognize that they asserted the ACIP Claim for the first time only two days ago. We do not think, however, that assertion of the ACIP Claim should delay production of the AR on the SCDM Claims. Accordingly, I would ask that we meet and confer as soon as possible on staggering the production of the AR on the First and Second SCDM Decisions and the ACIP Claim.

In the interest of expedition, when we meet and confer, set forth below is a list of categories of evidence that Plaintiffs believe should be included in the AR on the ACIP Claim. Generally, the categories of documents that Plaintiffs think should be collected for production of the AR on the ACIP Claim include, but are not limited to:

- Conflicts of interests disclosures for the current members of the ACIP (hereafter "Current ACIP Members") and the conflicts of interest disclosures for the 17 ACIP members terminated on June 9, 2025 (hereafter "Former ACIP Members");

- The "nomination packages" referenced on page 17 of the Advisory Committee on Immunization Policies and Procedures dated June 2022 for the Former ACIP Members and the Current ACIP Members;

- All communications seeking recommendations for membership on the ACIP after the Secretary was confirmed on February 2025;

- All documents submitted by Former ACIP Members and Current ACIP Members relating to or in support of their application for and membership on the ACIP;

Isaac C. Belfer
November 7, 2025
Page 5

- All documents, including but not limited to electronic communications by or between the Secretary or anyone else, regarding the decision to terminate the Former ACIP Members;

- All documents, including but not limited to electronic communications by or between the Secretary or anyone, else regarding the Current ACIP Members;

- All documents, including but not limited to electronic communications by or between the Secretary or anyone else, regarding the Directive;

- All documents, including but not limited to electronic communications by or between the Secretary or anyone else, regarding the decision to change to SCDM the Directive's instruction to the CDC to remove the Covid-19 vaccine recommendation from the CDC's immunization schedule

- All documents, including but not limited to electronic communications by or between the Secretary or anyone else, regarding the decision to put up for a vote at the September 2025 ACIP meeting whether to designate the Covid-19 vaccine as SCDM for all individuals;

- All documents, including but not limited to electronic communications by or between the Secretary or anyone else, regarding the decision to appoint any of the current ACIP members to the ACIP;

- All documents, including but not limited to electronic communications by or between the Secretary or anyone else, regarding the decision to terminate the Former ACIP Members;

Anticipating that Defendants will assert the deliberative process privilege with respect to at least some of the categories of documents listed above, I note that the deliberative process privilege cannot prevent a party from obtaining proof of their claims. *See New York v. Salazar, 701 F.Supp.2d 224, 237 (N.D.N.Y. 2010)* (citing *Children First Foundation, Inc. v. Martinez*, No. 04-CV-0927, 2007 WL 4344915, at *7 (N.D.N.Y. 2007)). Where the decision-making process "is *at the heart of the action*…the deliberative process privilege imposes no restriction on plaintiffs' access to pre-decisional materials, and all documents withheld from the administrative record on this basis must therefore be produced." *Id.* at 237 (holding documents could not be withheld on basis of deliberative process privilege) (emphasis added). Documents reflecting deliberations, if any, over the terminations of the Former ACIP Members and the appointments of the Current ACIP Members are, to be sure, at the heart of the ACIP Claim. Similarly, deliberations on the First and Second SCDM Decisions are at the heart of those claims. Accordingly, an assertion of the deliberative process privilege with regard to any of the Final Agency Actions challenged here would be legally dubious. Moreover, in his welcome remarks to HHS Staff on February 18, 2025, a few days after he was sworn in as

Isaac C. Belfer
November 7, 2025
Page 6

Secretary, the Secretary pledged to "launch a new era of radical transparency." Hiding behind the deliberative process privilege in this case would break that pledge.

### **Meet and Confer Request**

Given that this "is clearly a case that's of national importance" and "[i]t's one that needs to get addressed" (Transcript of October 30 hearing at 17:7-9), it is incumbent on all of us involved in this case to move this case forward as expeditiously as possible. Again, Plaintiffs believe that collection and production of the more voluminous AR on the ACIP Claim should not delay production of the AR on the SCDM Claims. Accordingly, we would like to meet and confer about staggering production of the AR on Monday or Tuesday of next week. Please let me know available times for a meet and confer call on Monday, November 10 or Tuesday November 11.

Thank you, and I hope you have a nice weekend.

Sincerely,

*Jimmy*

James J. Oh