UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN ACADEMY OF PEDIATRICS, *et al.*, Plaintiffs, | )<br>)<br>) |
| v. | )    Case No. 1:25-cv-11916 |
| | ) |
| ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the Department of Health and Human Services, *et al.*, Defendants. | )<br>)<br>)<br>)<br>) |

**BRIEF OF *AMICUS CURIAE* PEDIATRIC INFECTIOUS DISEASES SOCIETY, INC.
IN SUPPORT OF PLAINTIFFS**

## TABLE OF CONTENTS

STATEMENT OF THE INTEREST OF AMICUS ........................................................................ 1

SUMMARY OF ARGUMENT ...................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

   I.  THE REVISED DIRECTIVE WILL UNNECESSARILY INCREASE CHILD HOSPITALIZATION RATES; EXACERBATE THE DEVELOPMENTAL, SOCIAL, ECONOMIC, AND OTHER CONSEQUENCES OF CHILDHOOD ILLNESS; AND STRAIN THE HOSPITAL HEALTHCARE SYSTEM. ........................................................ 2

   II.  THE DIRECTIVE, THOUGH STYLED AS A RECOMMENDATION, DIVESTS PARENTS OF AGENCY TO PROTECT THEIR CHILDREN BY DISINCENTIVIZING PRIVATE INSURERES FROM FUNDING THE VACCINE, JEOPARDIZING CONTINUED PUBLIC FUNDING FOR THE VACCINE, AND PRESSURING PHYSICIANS TO MAKE RECOMMENDATIONS AT ODDS WITH MEDICAL SCIENCE. ......................................................................................................................... 4

   III.  THE DIRECTIVE HAS CAUSED UNNECESSARY CONFUSION WHICH HAS LED TO VACCINE HESITANCY, STRAIN ON FRONTLINE PROVIDERS, AND REDUCED BANDWIDTH FOR DOCTORS TO TEND TO OTHER SERIOUS DISEASES. .............. 7

   IV.  IN ADDITION TO PROTECTING INFANTS FROM DISPORTIONATE HEALTH OUTCOMES ATTRIBUTABLE TO COVID-19, MATERNAL VACCINATIONS WILL BOLSTER COMMUNITY PROTECTION BY SHIELDING THE NEXT GENERATION FROM COVID-19 AND ITS VARIOUS MUTATIONS. .................................................... 9

CONCLUSION ..............................................................................................................................11

## TABLE OF AUTHORITIES

*RULES*

U.S. Centers for Disease Control and Prevention, Secretarial Directive (May 19, 2025) (noticed to the public via X, Robert F. Kennedy, Jr. (@SecKennedy), X (May 27, 2025))(aff'd as final agency action by U.S. Centers for Disease Control and Prevention, "Child Immunization Schedule Notes" (July 2, 2025)) ........................................................................................... 1

*OTHER AUTHORITIES*

About PIDS, https://pids.org/about/ (last accessed Aug. 11, 2025) ............................................... 1

Agustín Ciapponi, *et al.*, "Safety and Effectiveness of COVID-19 Vaccines During Pregnancy: A Living Systematic Review and Meta-analysis," *PubMed* (National Library of Medicine, July 15, 2024) ................................................................................................................................. 10

Annenberg Public Policy Center, Univ. of Pennsylvania, "Annenberg Science and Public Health Knowledge Monitor," at 13 (Summer 2024) ............................................................................... 8

Fiona P. Havers, M.D., *et al.*, "Use of Respiratory Syncytial Virus Vaccines in Adults Aged ≥60 Years: Updated Recommendations of the Advisory Committee on Immunization Practices — United States, 2024," *Morbidity and Mortality Weekly Report* (U.S. Centers for Disease Control, Aug. 15, 2024) ........................................................................................................ 10

Fiona P. Havers, U.S. Centers for Disease Control and Prevention, National Center for Immunization and Respiratory Diseases, "COVID-19–Associated Hospitalizations — COVID-NET, April 2025 Update" (Apr. 15, 2025) ..................................................................... 3

Flor M. Munoz, et al. "Infant Antibodies After Maternal COVID-19 Vaccination During Pregnancy or Postpartum," *Pediatrics*, Vol. 156, Iss. 1 (June 24, 2025). .................................. 9

Kaiser Family Foundation, "KFF Tracking Poll on Health Information and Trust: COVID-19 Vaccine Update" (Aug. 1, 2025) ............................................................................................ 8

Ruth Link-Gelles, Ph.D., *et al.*, "Use of COVID-19 Vaccines for Persons Aged ≥6 Months: Recommendations of the Advisory Committee on Immunization Practices — United States, 2024–2025," (U.S. Centers for Disease Control, Sept. 10, 2024) ........................................... 10

Tina Tan, M.D., Infectious Disease Society of America, Letter to the Chair and Ranking Member of the Permanent Subcommittee on Investigations, U.S. Department of Homeland Security (July 15, 2025) ........................................................................................................................ 11

U.S. Centers for Disease Control and Prevention, "About Vaccines for Your Children" (Aug. 9, 2024) ........................................................................................................................................ 11

U.S. Centers for Disease Control and Prevention, "Child Immunization Schedule Notes" (July 2, 2025) ................................................................................................................................... 4, 7

U.S. Centers for Disease Control and Prevention, "Current Epidemiology of COVID-19" (June 25, 2025) ............................................................................................................................. 9, 10

U.S. Centers for Disease Control and Prevention, "Understanding the ACIP and How Vaccine Recommendations are Made in the US," You Tube (last accessed Aug. 26, 2025) .................. 6

U.S. Centers for Disease Control and Prevention, "Use of COVID-19 Vaccines for Persons Aged ≥6 Months: Recommendations of the Advisory Committee on Immunization Practices — United States, 2024–2025" (Sept. 19, 2024) ............................................................................ 3

U.S. Centers for Disease Control, National Center for Immunization and Respiratory Diseases, "Current Epidemiology of COVID-19" (June 25, 2025) ........................................................... 3

**STATEMENT OF THE INTEREST OF AMICUS**

*Amicus* Pediatric Infectious Diseases Society, Inc. ("PIDS") is a nonprofit, tax-exempt professional society that serves as the voice of physicians, doctoral-level scientists, advanced practice providers, and others advocating for the improved health of children with infectious diseases, both nationally and around the world. The mission of PIDS is to enhance the health of infants, children, and adolescents by promoting excellence in diagnosis, management, and prevention of infectious diseases through clinical care, education, research, and advocacy. As clinical, research, and teaching specialists in pediatric infectious diseases, PIDS members advise on best practices in the treatment and prevention of infectious diseases in children, including immunizations and antibiotic stewardship. *See* About PIDS, https://pids.org/about/ (last accessed Aug. 11, 2025). PIDS's specific interest in this case relates to the impact of the May 27, 2025, U.S. Department of Health and Human Services ("HHS") directive that changed the U.S. Centers for Disease Control and Prevention ("CDC") immunization schedule to remove the prior recommendation that healthy children aged 6 months-17 years and healthy pregnant women receive COVID-19 vaccinations. U.S. Centers for Disease Control and Prevention, Secretarial Directive (May 19, 2025) (noticed to the public via X, Robert F. Kennedy, Jr. (@SecKennedy), X (May 27, 2025))(aff'd as final agency action by U.S. Centers for Disease Control and Prevention, "Child Immunization Schedule Notes" (July 2, 2025)).

**SUMMARY OF ARGUMENT**

On May 27, 2025, the U.S. Department of Health and Human Services changed the CDC immunization schedule to remove the prior recommendation that healthy children and healthy pregnant women receive COVID-19 vaccinations. This arbitrary and capricious directive, which

1

is incongruent with medical science, is likely to increase preventable illness and hospitalization among children and infants; unnecessarily exacerbate developmental, social, economic, and other adverse consequences of childhood illness; and strain the healthcare system. The revised directive also divests parents of agency by disincentivizing private insurers from funding the vaccine and pressuring physicians to counsel patients with information that contradicts medical science. Parents of limited means may be foreclosed altogether from obtaining a vaccine, as the directive is likely to affect public-program coverage and procurement decisions as public providers adapt to schedule changes. Because the revised directive does not align with medical consensus, the Government has caused unnecessary confusion and fomented vaccine hesitancy, leading to resource strain and other adverse consequences. Finally, if the final directive reduces maternal vaccinations, it may reduce *community* immunity for COVID-19 and its various mutations.

## ARGUMENT

I. **THE REVISED DIRECTIVE WILL UNNECESSARILY INCREASE CHILD HOSPITALIZATION RATES; EXACERBATE THE DEVELOPMENTAL, SOCIAL, ECONOMIC, AND OTHER CONSEQUENCES OF CHILDHOOD ILLNESS; AND STRAIN THE HOSPITAL HEALTHCARE SYSTEM.**

COVID-19 is a preventable disease. Serious illness and childhood mortality attributable to COVID-19 are preventable. Yet, a CDC study released in 2024 revealed that COVID-19 continues to account for thousands of hospitalizations and hundreds of deaths each year, with the elderly being the highest risk group (especially those older than 75), followed closely by infants, who have the highest pediatric incidence rates, comparable to adults ages 65-74. U.S. Centers for Disease Control and Prevention, "Use of COVID-19 Vaccines for Persons Aged ≥6 Months: Recommendations of the Advisory Committee on Immunization Practices — United States, 2024–2025" (Sept. 19, 2024). Of children who were hospitalized for COVID-19 or related complications, one in four children (25 percent) were admitted to an intensive care unit, U.S. Centers for Disease

2

Control, National Center for Immunization and Respiratory Diseases, "Current Epidemiology of COVID-19" (June 25, 2025), with roughly the same number (22 percent) of infants younger than six months admitted to intensive care, 71 percent of whom had no underlying medical conditions. Of all hospitalized children under the age of 18, 89 percent of vaccine-eligible children had no record of a COVID-19 vaccination. *Id.* Fewer than five percent of children hospitalized due to COVID-19 had received the most recently recommend dose of the vaccination. *Id.* Only 3.5 percent of infants hospitalized for COVID-19 had a record of maternal vaccination. *Id.*

The rates of COVID-19-associated hospitalizations are higher for infants, young children, and elderly adults than they are for other age groups. Fiona P. Havers, U.S. Centers for Disease Control and Prevention, National Center for Immunization and Respiratory Diseases, "COVID-19–Associated Hospitalizations — COVID-NET, April 2025 Update" (Apr. 15, 2025). It is striking that infants and children have higher rates COVID-19-associated hospitalizations relative to adults because children and adults are not similarly situated comparators when it comes to disease and treatment. In nearly all clinical contexts, pediatric patients demonstrate more rapid recovery than adults across a broad spectrum of conditions, including orthopedic injuries, viral illnesses, and other acute or chronic ailments. The high rate of infant hospitalization relative to all other nonelderly age groups indicates that infants are more vulnerable to COVID-19 and its associated complications than adults and thus need additional protection.

Admittedly, at least in the United States, children rarely die from COVID-19 even though they are at greater risk relative to other age groups. However, childhood mortality rates, alone, do not inform sound vaccine policy. When children contract this preventable illness, they must stay home from day care and school; they miss important instruction and developmental opportunities; they may spread the disease to other children, amplifying the developmental, economic, social,

3

and other consequences of the disease; parents must stay home from work or arrange for a caregiver, which in either instance, economically impacts the family; if a child lives with an elderly or immunocompromised person, they may pose a serious (potentially life-threatening) threat to this individual; some of these children will seek assistance from urgent care or be admitted to the ER or intensive care unit, or require mechanical ventilation, in each instance straining hospital resources and placing additional burdens on providers. In other words, the revised directive will have a cascading adverse impact on developmental, economic, social, and other factors which otherwise could be mitigated significantly by restoring the directive to align with evidence-based science and the recommendations of the medical community.

**II. THE DIRECTIVE, THOUGH STYLED AS A RECOMMENDATION, DIVESTS PARENTS OF AGENCY TO PROTECT THEIR CHILDREN BY DISINCENTIVIZING PRIVATE INSURERES FROM FUNDING THE VACCINE, JEOPARDIZING CONTINUED PUBLIC FUNDING FOR THE VACCINE, AND PRESSURING PHYSICIANS TO MAKE RECOMMENDATIONS AT ODDS WITH MEDICAL SCIENCE.**

When the CDC revised the immunization schedule to remove the recommendation that children and pregnant women receive an annual COVID-19 vaccination, it purported to vest parents and healthcare providers with individualized agency to determine whether to obtain a vaccine for their child. U.S. Centers for Disease Control and Prevention, "Child Immunization Schedule Notes" (July 2, 2025)("Shared clinical decision-making vaccinations are individually based and informed by a decision process between the healthcare provider and the patient or parent/guardian. Where the parent presents with a desire for their child to be vaccinated, children six months and older may receive COVID-19 vaccination, informed by the clinical judgment of a healthcare provider and personal preference and circumstances."). In actuality, the directive divests parents of agency over their child's wellbeing (and potentially, their child's life) by erecting

4

logistical barriers that frustrate or prevent parents and expecting mothers from obtaining the vaccine.

First, the revised directive disincentivizes private insurers from funding the vaccine, making individual providers less inclined to stock the vaccine amidst uncertainty about whether insurers will cover costs. Already, healthcare providers are cancelling standing orders for bulk purchases of the vaccine, meaning that even if parents wish to vaccinate their children based on an informed understanding of evidence-based science, they may not have the option to do so through their healthcare provider. Further, because COVID-19 has been removed from the CDC's recommended immunization schedule, parents of limited financial means may no longer be able to obtain a COVID-19 vaccine under the Vaccines for Children ("VFC") Program, a federally funded program that provides free vaccines to eligible children, and similar state-funded programs. Not only might this foreclose parents of limited means from protecting their children from a preventable disease, but it may also exacerbate economic health disparities, especially insofar as financially insecure children are more likely to present co-morbidities that put them at a higher risk for serious illness and complications. Essentially, wealthy, educated parents who have insurance or are able to pay out of pocket may be able to obtain the vaccine *if* they can find a provider who stocks it; parents of limited means may be foreclosed of this opportunity altogether, unable to protect their children from preventable illness and exacerbating health disparities between and among different demographic groups. In either instance, the promise that parents can make an "individually based and informed" decision on behalf of their child is illusory if the parents do not have reasonable access to the actual vaccine.

Second, healthcare providers must decide whether to imperil their own practice by contravening the CDC recommendation to provide patient care aligned with evidence-based

5

science and medical consensus. CDC recommendations are informed by the Advisory Committee on Immunization Practice ("ACIP"), an advisory body that has been in existence since the 1960s. Until the June 9, 2025, mass firings, the ACIP was comprised of renowned immunologists, epidemiologists, physicians, and other experts who were well equipped to make evidence-based recommendations as to U.S. vaccine policy. Historically, the CDC has deferred to ACIP's expertise to create the recommended immunization schedule. U.S. Centers for Disease Control and Prevention, "Understanding the ACIP and How Vaccine Recommendations are Made in the US," You Tube (last accessed Aug. 26, 2025) ("[ACIP] recommendations are reviewed and adopted by the CDC"). CDC immunization directives, informed by the ACIP, set the standard of care for physicians in the industry, which until the most recent CDC directive, always aligned with evidence-based science and reflected the consensus of the medical community. *Id.* Today, the revised directive—that is, the standard of care set by our nation's highest government health official—contravenes evidence-based science and medical consensus. Physicians must choose between aligning their practice with the government's perilous standard of care, on the one hand, and exposing themselves to legal risk by knowingly contravening the standard of care, which of course would be germane to medical malpractice litigation. This Hobson's Choice may very well dissuade physicians from recommending scientifically sound vaccinations. Without the benefit of medically-sound physician advice, parents are divested of their own agency to make informed decisions about their child's health (again, contrary to the CDC's representation that they can make "individually based and informed" decisions), imperiling the health and wellbeing of children. To put a finer point on it, the federal government has imposed a *de facto* gag order that prevents physicians from counseling patients consistent with evidence-based medical science, and in so

doing, usurps individual patient freedom by foreclosing parents from making informed life and death decisions about their own children.

### III. THE DIRECTIVE HAS CAUSED UNNECESSARY CONFUSION WHICH HAS LED TO VACCINE HESITANCY, STRAIN ON FRONTLINE PROVIDERS, AND REDUCED BANDWIDTH FOR DOCTORS TO TEND TO OTHER SERIOUS DISEASES.

Pediatricians, obstetricians, and other physicians, including members of *amicus* Pediatric Infectious Diseases Society, Inc., routinely advise patients (and, as relevant here, their parents, guardians, and other caregivers) with respect to childhood vaccines. Many pregnant patients and caregivers consult physicians regarding the safety, effectiveness, and advisability of these vaccines. This approach reflects the shared clinical decision-making model that has long applied to childhood vaccines.  U.S. Centers for Disease Control and Prevention, "Child Immunization Schedule Notes" (July 2, 2025). Some of those caregivers have researched childhood vaccines on their own or have read news articles and other media regarding vaccines and the regulatory approval process for those vaccines.  Since the onset of the COVID-19 pandemic, the regulatory process has become front-page news for many Americans, increasing general awareness among patients of the latest developments in COVID-19 vaccine approvals and recommendations. In the current moment, this increased awareness of the regulatory process for vaccines is coupled with an increased skepticism in vaccines. Annenberg Public Policy Center, Univ. of Pennsylvania, "Annenberg Science and Public Health Knowledge Monitor," at 13 (Summer 2024) (describing an "increase in perceptions that the COVID-19 vaccines are very or somewhat unsafe (from 18% to 24%)").

Many patients and caregivers look to their physicians for guidance regarding vaccines. Doctors and healthcare providers remain the most trusted source for vaccine information. Kaiser

7

Family Foundation, "KFF Tracking Poll on Health Information and Trust: COVID-19 Vaccine Update" (Aug. 1, 2025) (finding that 80 percent of Americans have "a great deal" or "a fair amount" of trust in their doctor or healthcare provider to provide reliable information about vaccines). At the same time, despite extensive news and social media coverage of vaccine approvals, many patients remain uncertain about recent recommendations. In a recent poll, nearly half of parents of children under age 18 reported that they are not sure if federal health agencies are currently recommending COVID-19 vaccination for healthy children this fall. *Id.* Additionally, many patients and caregivers are losing trust in federal health agencies, with less than half of Americans, across partisanship, trusting the CDC and U.S. Food and Drug Administration ("FDA") to make major decisions based on science rather than the personal views of agency officials. *Id.* Despite their well-earned trust and extensive experience communicating with patients and caregivers with respect to these vaccines, physicians' vaccine recommendations based in science and medical practice are frequently confusing to patients and caregivers because they are at odds with the updated CDC recommendation. Patients and caregivers also confront conflicts between the FDA's approval of the COVID-19 vaccines and the updated CDC recommendations, worsening the challenge of patient communication. The nature of this conflicting information, particularly that such information originates from authoritative sources, deepens the sense of confusion among patients and caregivers.

Faced with this confusion, many patients and caregivers choose to forego vaccines and the benefits they provide. Some seek follow-up appointments with their physicians to seek additional counseling, while others consider second opinions from other physicians. Beyond the public health impact, vaccine hesitancy places an acute economic stress on the healthcare delivery system, forcing physicians to spend more time on each individual vaccine-hesitant patient. This takes

physicians' time from seeing other patients in need of care and advice and further burdens the healthcare system still recovering from staffing shortages caused by the pandemic.

### IV. IN ADDITION TO PROTECTING INFANTS FROM DISPORTIONATE HEALTH OUTCOMES ATTRIBUTABLE TO COVID-19, MATERNAL VACCINATIONS WILL BOLSTER COMMUNITY PROTECTION BY SHIELDING THE NEXT GENERATION FROM COVID-19 AND ITS VARIOUS MUTATIONS.

No COVID-19 vaccine products are available for infants under six months of age. U.S. Centers for Disease Control and Prevention, "Current Epidemiology of COVID-19" (June 25, 2025). Infants solely derive protection from maternal antibodies, either from vaccination during pregnancy or a pregnant woman's prior infection. *Id.* Infants are hospitalized at a higher rate than all other pediatric patients for COVID-19 complications, whether or not they have underlying medical conditions. Flor M. Munoz, et al. "Infant Antibodies After Maternal COVID-19 Vaccination During Pregnancy or Postpartum," *Pediatrics*, Vol. 156, Iss. 1 (June 24, 2025). As previously stated, they also are hospitalized at a disproportionate rate relative to adults ages 18-65, an alarming statistic when all other variables are controlled. Maternal vaccination has been demonstrated to reduce COVID-19–related hospitalization in infants under six months, effectively bridging the gap until infants are eligible for direct vaccination. Fiona P. Havers, M.D., *et al.*, "Use of Respiratory Syncytial Virus Vaccines in Adults Aged ≥60 Years: Updated Recommendations of the Advisory Committee on Immunization Practices — United States, 2024," *Morbidity and Mortality Weekly Report* (U.S. Centers for Disease Control, Aug. 15, 2024). Coupled with the observed efficacy of vaccines in children 6 months and older, these data provide a compelling case that both maternal and pediatric vaccination directly reduce severe outcomes in the youngest populations. Ruth Link-Gelles, Ph.D., *et al.*, "Use of COVID-19 Vaccines for Persons Aged ≥6 Months: Recommendations of the Advisory Committee on Immunization Practices — United States, 2024–2025," (U.S. Centers for Disease Control, Sept. 10, 2024). Furthermore, large

observational studies and meta-analyses confirm the safety of mRNA COVID-19 vaccines in pregnancy and early childhood, supporting the risk-benefit profile for these populations. Agustín Ciapponi, *et al.*, "Safety and Effectiveness of COVID-19 Vaccines During Pregnancy: A Living Systematic Review and Meta-analysis," *PubMed* (National Library of Medicine, July 15, 2024).

Again, infant infection and mortality rates are only one of many factors that should inform sound vaccination policy. A U.S. policy that encourages maternal vaccination (and child vaccinations) benefits the *entire* community. Specifically, by mimicking "nature's gift" (that is, the natural transference of protective antibodies from a pregnant woman to her fetus), maternal vaccinations reduce infant vulnerability and contribute to broader community protection by passively transferring antibodies to the next generation. U.S. Centers for Disease Control and Prevention, ["Current Epidemiology of COVID-19"](#) (June 25, 2025). Indeed, history has proven that childhood and maternal vaccinations can reduce and even eradicate diseases, at least in developed nations that have access to resources. U.S. Centers for Disease Control and Prevention, ["About Vaccines for Your Children"](#) (Aug. 9, 2024) (acknowledging that certain diseases are no longer common in the United States due to childhood vaccines). Polio is among the most notorious of examples. To that end, maternal and childhood vaccinations are an "essential component of homeland security and pandemic preparedness." Tina Tan, M.D., Infectious Disease Society of America, [Letter to the Chair and Ranking Member of the Permanent Subcommittee on Investigations](#), U.S. Department of Homeland Security (July 15, 2025). By removing COVID-19 vaccine recommendations for pregnant people and for healthy children, such changes could reduce routine population immunity and complicate efforts to maintain high levels of community protection against SARS-CoV-2. Maternal and childhood vaccination have historically contributed to prevention of serious disease in infants and young children; a reduction in routine uptake could

make future outbreak control and mitigation more challenging. That said, pandemic preparedness and disease eradication depend on multiple factors — vaccine development, surveillance, uptake across populations, and global cooperation — and the effect of this schedule change on long-term pandemic trajectories is uncertain but plausibly negative if it results in substantially lower vaccination coverage in vulnerable groups.

## CONCLUSION

HHS's May 27, 2025, revised directive contravenes evidenced-based science and medical consensus. This arbitrary and capricious directive will have adverse consequences with respect to childhood hospitalization rates, resource strain, erosion of public trust, parental agency, and community immunity.

Respectfully submitted,

/s/

Holly E. Peterson
Counsel
Admitted *pro hac vice*
Maryland Bar No. 1206200049
District of Columbia Bar No. 90020209

Kevin M. Serafino
Associate
Admitted *pro hac vice*
District of Columbia Bar No. 1724705

Tenenbaum Law Group PLLC
601 13th Street NW, 12th Floor
Washington, DC 20005
Tel. (202) 221-8006
Fax (202) 221-8001
hpeterson@tenenbaumlegal.com

kserafino@tenenbaumlegal.com

Counsel for *Amicus Curiae*

12

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December, 2025, this document was filed through the Court's CM/ECF system, which served it upon all counsel of record. Dated: December 16, 2025.

Respectfully submitted,

/s/

Holly E. Peterson
Admitted *pro hac vice*

13