**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

AMERICAN ACADEMY OF PEDIATRICS, et al.,
Plaintiffs,
v.
ROBERT F. KENNEDY, JR., et al.,          Case No. 1:25-cv-11916 (BEM)
Defendants,
and
CHILDREN'S HEALTH DEFENSE, et al.,
Intervenor-Defendants/Counterclaim Plaintiffs,
v.
AMERICAN ACADEMY OF PEDIATRICS, et al.,
Counterclaim Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF**
**EMERGENCY MOTION TO INTERVENE**

**INTRODUCTION**

Proposed Intervenors Children's Health Defense ("CHD"), Andrea Shaw, Shanticia Nelson, Dr. Paul Thomas, and Dr. Kenneth Stoller seek to intervene in this action as defendants and counterclaim plaintiffs pursuant to Federal Rule of Civil Procedure 24(a)(2), or in the alternative, Rule 24(b)(1)(B). This memorandum sets forth the legal basis for intervention.

The Court is poised to rule on Plaintiffs' motion for a preliminary injunction that would restore a childhood vaccination schedule the Institute of Medicine twice found has never been tested for cumulative safety. No party in this case has presented the IOM's findings. No party has identified a child harmed under the schedule Plaintiffs seek to restore. No party has challenged AAP's foundational claim that the schedule was "rigorously tested." Proposed Intervenors present all three: the IOM reports, the families who buried their children under the prior schedule, and the physicians who lost their licenses for questioning it.

The First Circuit applies a four-part test to intervention as of right. *Geiger v. Foley Hoag LLP*, 521 F.3d 60, 64–65 (1st Cir. 2008). Each element of the four-part test is satisfied here.

1

**ARGUMENT**

## I.     PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(a)(2)

Federal Rule of Civil Procedure 24(a)(2) provides that a court must permit intervention by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The First Circuit analyzes four factors: (1) timeliness; (2) whether the applicant claims an interest relating to the subject of the action; (3) whether disposition may impair or impede that interest; and (4) whether existing parties adequately represent it. *Geiger v. Foley Hoag LLP*, 521 F.3d 60, 64–65 (1st Cir. 2008).

### A.     The Motion Is Timely

Timeliness is assessed considering the totality of the circumstances, including "the length of time the applicant knew or should have known of its interest before making the motion, prejudice to the parties, prejudice to the applicant, and the existence of extraordinary circumstances." *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 785 (1st Cir. 1988) (citing *Culbreath v. Dukakis*, 630 F.2d 15, 20–24 (1st Cir. 1980)).

This motion is timely. It was only after the Government filed its opposition papers to Plaintiffs' motion for a preliminary injunction late February 9, 2026, that intervenors realized how narrow its defense of the motion would be, as explained below. The Court has not yet ruled on the preliminary injunction motion. This motion is filed before any party is prejudiced and

2

contemporaneously with the deadline the Court set for supplemental briefing. Proposed Intervenors filed at the earliest opportunity after the February 13 hearing which granted Plaintiffs' Motion to File the Fourth Amended Complaint, and which hearing revealed the scope of the Court's inquiry.

Moreover, there is nothing unusual about intervention at the preliminary *i*njunction stage. Courts routinely permit intervention before a ruling on preliminary relief. *See, e.g., Food & Water Watch, Inc. v. United States Army Corps of Eng'rs*, 570 F. Supp. 2d 177 (D. Mass. 2008) (granting intervention while motion for preliminary injunction was pending and permitting intervenor to participate in PI briefing). The Court's bifurcation of the preliminary injunction hearing into two parts, with the oral argument on the second part scheduled weeks away in mid-March further suggests that this proposed intervention will not disrupt proceedings.

### B.    Proposed Intervenors Have Direct, Concrete Interests

The interest required for intervention must be "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531 (1971).

Proposed Intervenors' interests are concrete, direct, and legally protectable:

***Andrea Shaw and Shanticia Nelson.*** Mrs. Shaw's fraternal twins died eight days after receiving their 18-month vaccines. Ms. Nelson's daughter died twelve hours after receiving twelve antigens in a single catch-up visit. Both mothers reported concerns that were overridden by AAP's contraindications framework. They are plaintiffs in *Shaw v. American Academy of Pediatrics*, No. 1:26-cv-00171 (D.D.C.), a pending RICO action alleging that AAP made material misrepresentations about the safety of the schedule. If this Court restores the prior schedule, it judicially validates the protocol under which their children died and directly prejudices their pending RICO claims. Jaffe Decl. ¶¶ 5–6, 12–13.

3

***Dr. Paul Thomas and Dr. Kenneth Stoller.*** Dr. Thomas published a vaccinated-versus-unvaccinated study—the very methodology the IOM recommended—and had his license suspended shortly thereafter. Dr. Stoller used genetic testing to identify at-risk children and had his license revoked for deviating from ACIP guidelines. If the prior schedule is restored, the individualized clinical approach for which both physicians lost their licenses will once again constitute professional misconduct. Jaffe Decl. ¶¶ 14–15.

***Children's Health Defense.*** CHD publishes books, daily news, and educational programming on vaccine safety, competing directly with AAP in the market for vaccine-related health information. If the prior schedule is restored by judicial order, CHD's competing publications are delegitimized. CHD is also a plaintiff in both the *Shaw* and *Thomas* actions, whose outcomes will be directly affected by this Court's ruling. Jaffe Decl. ¶ 16.

### C.    Disposition Will Impair Intervenors' Interests

The impairment inquiry is practical, not technical. The question is whether "as a practical matter" disposition of the action may impair the applicant's ability to protect its interest. Fed. R. Civ. P. 24(a)(2). The First Circuit has recognized that impairment "need not be certain or inevitable; it is enough that disposition 'may' impair or impede the applicant's interest." Fed. R. Civ. P. 24(a)(2).

If the Court grants the preliminary injunction and restores the prior schedule:

• The schedule under which the Shaw twins and Sa'Niya Carter died will be reimposed by judicial order, directly harming the Shaw and Nelson families and prejudicing their pending RICO claims.

- The individualized clinical approach for which Dr. Thomas and Dr. Stoller lost their licenses will again constitute professional misconduct, impeding their efforts to restore their practices.

- CHD's publications questioning the schedule's safety will be contradicted by a federal court order restoring it, impairing CHD's competitive position in the market for vaccine-related health information; and

- The Court will have restored the schedule on a record that does not contain the IOM reports, the state-by-state comparison, or the enforcement infrastructure that Plaintiffs' own declarants described under oath—foreclosing the possibility of a fully informed judicial determination.

### D.     No Existing Party Adequately Represents Intervenors' Interests

The burden of showing inadequacy of representation is "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). The applicant "need show only that the representation 'may be' inadequate, not that it 'is' inadequate." *Id.* Where the interests of the proposed intervenor diverge from those of the existing parties, the burden is met. *Id.*

The government Defendants' interests necessarily diverge from those of Proposed Intervenors. The government's opposition briefing focuses, as one would expect, on the Secretary's legal authority. It does not address the interests Proposed Intervenors seek to protect. In forty-five pages, Defendants:

- Argue that the Secretary had the *authority* to revise the schedule but do not argue the schedule *needed* revising.

- Do not cite the IOM's 2002 or 2013 reports finding the cumulative schedule was never tested. (Exhibits C and D attached to the Jaffe Declaration).

- Do not challenge AAP's claim in Paragraph 34 of the Fourth Amended Complaint that vaccine safety is "rigorously tested".[1]

- Do not identify a single child harmed under the prior schedule; and

- Do not address the enforcement infrastructure—HEDIS metrics, combination vaccines, the Red Book contraindications framework—that Plaintiffs' own declarants described under oath.

This divergence is not a criticism of the government's litigation strategy. It reflects the reality that the government has distinct institutional interests. The government's own agencies endorsed the prior schedule for decades. Its FDA licensure decisions, CDC endorsements, and VICP adjudications all rest on the premise that the schedule was safe. The government is understandably not positioned to argue that the schedule it endorsed caused harm to specific children. Jaffe Decl. ¶¶ 9-10, 18-19.

The *Thomas v. Monarez* proceeding further illustrates the divergence. In that parallel federal case, the Department of Justice will soon be moving to dismiss the claims of two of the Proposed Intervenors, Drs. Thomas and Stoller. And will likely argue that they have no right to force it to reconsider the recommended status of ACIP schedule. The government has its own institutional position on these questions, and that position does not encompass the interests Proposed Intervenors seek to protect here. Jaffe Decl. ¶ 19.

## II.    THIS MOTION IS READILY DISTINGUISHABLE FROM THE COURT'S DENIAL OF THE PEREZ MOTION TO INTERVENE

---

[1] At the February 13 hearing, Defendants' counsel argued that the government seeks to restore trust in public health and increase vaccine uptake—a position that does not address the cumulative safety-testing deficiencies Intervenors raise here.

The Court previously denied Jose Perez's motion to intervene. That denial does not control here. Mr. Perez appeared pro se. He did not confer with opposing counsel. He filed procedurally deficient papers. He asserted diffuse constitutional interests indistinguishable from those of any citizen.

Proposed Intervenors are represented by experienced federal litigation counsel who serves as counsel of record in three related federal proceedings. They assert concrete, particularized interests that no other party shares: two families whose children died under the schedule Plaintiffs seek to restore, two physicians whose licenses were revoked for questioning it, and a nonprofit organization with a pending RICO action against AAP. They have conferred with all counsel of record. Their filings comply with all applicable rules. They present evidence—the IOM reports, the state-by-state comparison, the enforcement infrastructure—that no existing party has introduced.

## III.    IN THE ALTERNATIVE, PERMISSIVE INTERVENTION IS WARRANTED

Even if the Court determines that intervention as of right is not available, permissive intervention under Rule 24(b)(1)(B) is appropriate. Permissive intervention requires only that the applicant's claim or defense shares "a common question of law or fact" with the main action and that intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3).

Both requirements are satisfied. Proposed Intervenors' defenses and counterclaims share the central question of this litigation: whether the childhood immunization schedule is evidence-based, safe as administered, and lawfully mandated. Their Proposed Answer with Affirmative Defenses and Counterclaims, filed simultaneously, addresses this question with evidence no existing party has introduced.

Intervention will cause no delay. Proposed Intervenors accept the Court's existing schedule, including the March 13 second hearing on the preliminary injunction. They will not seek continuances. Their opposition to the preliminary injunction is filed simultaneously with this motion. The Court's bifurcated hearing structure accommodates additional briefing without disrupting the proceedings.

## IV.    THE EVIDENCE INTERVENORS PRESENT BEARS DIRECTLY ON THE PRELIMINARY INJUNCTION

Even if the Court were to deny intervention, it should consider the evidence presented in the Declaration of Richard Jaffe and its Exhibits before ruling on the preliminary injunction. *See Fed. R. Civ. P. 24(a)(2) advisory committee's note to 1966 amendment* (intervention serves to protect "practical interests" and to ensure a "complete adjudication"). The Court has inherent authority to consider relevant evidence bearing on the PI factors regardless of whether formal intervention is granted.

The Jaffe Declaration and Exhibits present evidence that transforms the factual landscape of this case on three of the four preliminary injunction factors:

***Likelihood of success.*** Plaintiffs' case rests on the premise that the prior schedule was "rigorously tested." The IOM's 2002 and 2013 reports (Exhibits C and D) establish that it was not. Plaintiffs' alarm about the new eleven-vaccine schedule is pretextual: Massachusetts requires only nine to ten vaccines, California requires ten, and AAP has never sued either state. Plaintiffs' own declarations describe not a public health program but a coercive enforcement infrastructure designed to eliminate clinical judgment.

*Irreparable harm and balance of equities.* Plaintiffs' individual declarants describe sleeplessness, tooth-grinding, and gasoline expenses. Proposed Intervenors describe dead children. The balance is not close.

*Public interest.* Shared clinical decision-making is the international norm in seventeen EU nations, the United Kingdom, and Japan—all of which achieve vaccination rates equal to or exceeding those of the United States. Exhibit E addresses the January guidance and demonstrates that the transition to SCDM will not reduce access to or insurance coverage for vaccines.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that this Court grant their Motion to Intervene, accept the accompanying Proposed Answer with Affirmative Defenses and Counterclaims, and consider the evidence presented in the Jaffe Declaration and its Exhibits before ruling on Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

RICHARD A. JAFFE (pro hac vice pending)
Cal. Bar No. 289362
428 J Street, 4th Floor
Sacramento, California 95814
Tel: 916-492-6038
rickjaffeesquire@gmail.com
*Attorney for Proposed Intervenor-*
*Defendants/Counterclaim Plaintiffs*

/s/Robert N. Meltzer
ROBERT N. MELTZER, BBO #564745
The Mountain States Law Group
Wheelhouse at the Bradford Mill
33 Bradford Street
Concord, Massachusetts 01742
Tel: (978) 254-6289
inbox@mountainstateslawgroup.com
*Local Counsel for Proposed Intervenor-*
*Defendants/Counterclaim Plaintiffs*

February 18, 2026