UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMERICAN ACADEMY OF PEDIATRICS, *et al.*,

        Plaintiffs,

  v.

ROBERT F. KENNEDY, JR., *et al.*,

        Defendants.

Case No. 1:25-cv-11916-BEM

**Memorandum in Opposition to Plaintiffs' Motion for Leave to File Supplemental Declarations in Support of Their Motion for Preliminary Injunction**

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

JAMES W. HARLOW
Acting Assistant Director

ISAAC C. BELFER (D.C. Bar No. 1014909)
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
(202) 305-7134
(202) 514-8742 (fax)
Isaac.C.Belfer@usdoj.gov

**INTRODUCTION**

Under the guise of responding to "the two May 12, 2025 memoranda" submitted with Defendants' second opposition and "provid[ing] the Court with updates" regarding alleged irreparable harm since Plaintiffs filed their preliminary injunction motion, ECF No. 274, at 1, Plaintiffs filed five supplemental declarations on March 2, 2026, that mostly discuss other things. The Havers Declaration discusses deliberations at the April 2025 ACIP meeting and the prior meetings of the COVID-19 Work Group, and the Romero Declaration discusses the process for selecting ACIP members from 2014 to 2021. This information could have been filed with Plaintiffs' preliminary injunction motion in January, and the Court should not reward Plaintiffs' tactics in waiting to present it until March 2, after Defendants filed their second opposition. And even if the Court considered the Havers and Romero Declarations, they do not change the fact that the Secretarial Directive was within the Secretary's unconstrained discretion to make vaccine recommendations, and in any event was well within the zone of reasonableness.

The Benjamin, Berman, and Goldman Declarations are equally improper. Far from "updat[ing]" the Court about irreparable harm since January, ECF No. 274, at 1, they repeat Plaintiffs' irreparable harm theories from their preliminary injunction papers. For the reasons explained in Defendants' oppositions, these theories fail to show irreparable harm.

In sum, the five new declarations should not be permitted. And even if the Court considered them, Plaintiffs have still failed to show entitlement to the extraordinary remedy of a preliminary injunction.

**ARGUMENT**

**I.     The Court Should Deny Leave to File Plaintiffs' Latest Supplemental Declarations**

Plaintiffs argue that the Havers, Romero, and Goldman Declarations "respond directly to the two May 12, 2025 memoranda" (i.e., the Memoli-Brenner assessment and the Høeg

assessment) that Defendants produced as exhibits to their opposition filed on February 27, 2026. ECF No. 274, at 1. However, out of the 60 total paragraphs in the Havers, Romero, and Goldman Declarations, ***only six*** respond to the May 2025 memoranda. *See* Havers Decl., ECF No. 274-3, ¶¶ 18–19; Romero Decl., ECF No. 274-4, ¶ 20; Goldman Decl., ECF No. 274-5, ¶¶ 11–13.

These three declarations primarily address events that predate the filing of Plaintiffs' preliminary injunction motion on January 26, 2026. ECF No. 183. The Havers Declaration mostly discusses deliberations about the COVID-19 vaccine at the April 2025 ACIP meeting and the prior meetings of the COVID-19 Work Group. Havers Decl. ¶¶ 6–17, 20. The Romero Declaration mostly discusses the process for selecting ACIP members from 2014 to 2021, when Dr. Romero was an ACIP member. Romero Decl. ¶¶ 2, 6–19. And the Goldman Declaration repeats Plaintiffs' irreparable harm arguments from their preliminary injunction brief and supporting declarations. Goldman Decl. ¶¶ 13–18. All this information could have been filed with Plaintiffs' preliminary injunction motion in January. There is no excuse for Plaintiffs waiting to present this information until after Defendants filed their second opposition and less than 48 hours before the second preliminary injunction hearing.

Similarly, Plaintiffs' claim that the "supplemental declarations of Dr. Benjamin and Dr. Berman provide the Court with updates regarding the ongoing and worsening harms to Plaintiffs and their members," ECF No. 274, at 1, rings hollow. Dr. Benjamin's supplemental declaration largely reprises points addressed in his declaration from a few weeks ago. *Compare* ECF No. 274-1, ¶¶ 3–4, 6, 8, *with* ECF No. 185-25, ¶¶ 11, 26–27, 30. Dr. Berman's supplemental declaration also is cumulative. *Compare* ECF No. 274-2, ¶¶ 3–8, 10, 16–17, *with* ECF No. 185-31, ¶¶ 8–19.

Because the timing of these declarations is improper and prejudices Defendants, the

2

Court should deny Plaintiffs leave to file them. Or, at the least, the Court should strike those parts of the declarations that do not respond directly to the May 2025 memoranda or describe harm that arose after Plaintiffs filed their preliminary injunction papers on January 26, 2026. *See Animal Welfare Inst. v. Martin*, 588 F. Supp. 2d 70, 80–81 (D. Me. 2008) (denying "leave to file rebuttal and supplemental declarations" that were offered "one business day prior to oral argument" on the preliminary injunction motion and did not respond to "new matters" that movant "lacked the opportunity to address" previously); *see also Flores v. Bennett*, 635 F. Supp. 3d 1020, 1029–30 (E.D. Cal. 2022) (denying plaintiffs' "motion for leave to file a supplemental declaration" filed "two days prior to the preliminary injunction hearing" even though it purportedly "contain[ed] information about alleged ongoing actual irreparable harm").

## II.     The Supplemental Declarations Do Not Support Preliminary Relief

Even if the Court considered the supplemental declarations, they do not show a violation of the Administrative Procedure Act ("APA") or the Federal Advisory Committee Act of 1972 ("FACA"), nor do they add anything to Plaintiffs' deficient showing of irreparable harm.

### A.     The Havers, Romero, and Goldman Declarations Are Irrelevant

#### 1.     The Havers Declaration

The Havers Declaration focuses on deliberations about the COVID-19 vaccine at the April 2025 ACIP meeting and the prior meetings of the COVID-19 Work Group. Havers Decl. ¶¶ 6–17, 20. But those meetings are not at issue in this litigation.

The two paragraphs of the Havers Declaration that address the May 2025 memoranda (¶¶ 18–19) are a distraction. Dr. Havers says she "had no knowledge of these memos while [she] was at CDC" and does not believe her "colleagues at CDC who had responsibilities related to . . . the COVID-19 virus were consulted or knew about these memos in May 2025." *Id.* ¶ 18. But indisputably, the Secretary was not required to consult with Dr. Havers or her unidentified

3

"colleagues"—rather than the Secretary's preferred advisors—before exercising his statutory authority to issue the May Directive. *See Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (agency decisionmakers "ha[ve] discretion to rely on the reasonable opinions of [their] own qualified experts").

Finally, Dr. Havers asserts that "[t]he Hoeg memo ignores the data on hospitalizations of children less than six months old." Havers Decl. ¶ 19. But the Memoli-Brenner assessment explained why child hospitalization data likely overestimated the true incidence of such events, ECF No. 273-1, at 2–3, and both the Hoeg assessment and the Secretarial Directive expressly considered COVID-19 vaccine safety and efficacy, *see* ECF No. 185-1; ECF No. 273-2. Even if Dr. Havers disagrees with how the Secretary weighed the evidence, the Court cannot "substitute its judgment for that of the" Secretary. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted); *see Dep't of Comm. v. New York*, 588 U.S. 752, 781 (2019) ("Agency policymaking is not a rarified technocratic process . . . .") (quotations omitted).

   2. **The Romero Declaration**

The Romero Declaration claims that, from 2014 to 2021, HHS selected ACIP members according to the ACIP Membership Balance Plan. Romero Decl. ¶¶ 2, 6–19. Even if true, that does not show that the Secretary's ACIP appointments starting in June 2025 were unlawful. As Defendants explained, "[t]he Membership Balance Plan is not required by law, and the Secretary was not required to follow it in selecting ACIP members." ECF No. 254, at 1. Membership balance plans are not required by FACA or any HHS regulation but instead emanated from policy guidance of the General Services Administration ("GSA") to agency heads about how to implement FACA. *See* 41 C.F.R. §§ 102-3.5 and 102-3.60 (July 1, 2025 ed.); ECF No. 254, at 6–

4

8.[1] GSA's FACA "guidelines" did not "carry[] the force of law," *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 465 n.12 (1989), nor did they "create any right . . . , substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities," 41 C.F.R. § 102-3.5 (July 1, 2025 ed.). Thus, the voluntary method for selecting ACIP members from 2014–2021 says nothing about the lawfulness of the Secretary's ACIP appointments since June 2025. *See Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 719 F. Supp. 2d 26, 43 (D.D.C. 2010) (it "was not arbitrary and capricious" for the agency not to follow a procedure that was not required), *aff'd*, 663 F.3d 476 (D.C. Cir. 2011).

Dr. Romero might not like that some ACIP members "have publicly stated views that are skeptical of, if not anti, vaccines" or "are affiliated with anti-vaccine organizations," Romero Decl. ¶ 19, but that does not show a FACA violation. "Congress intended 'balance' to be judged by the members' employment status and background, not their professed personal opinions," and "[n]othing in [FACA] or its legislative history even slightly indicates that Congress intended the presence or absence of balance to turn on an inquiry into the opinions of individual members." *Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*, 886 F.2d 419, 437 (D.C. Cir. 1989) (Edwards, J., concurring in part and dissenting in part). Moreover, the deliberations and votes at the ACIP's June, September, and December 2025 meetings show that the ACIP members are not categorically "anti-vaccine," but hold complex and nuanced perspectives and have taken actions supportive of vaccines. *See* ECF No. 232, at 24–28.

Finally, the one paragraph of the Romero Declaration that responds to the May 2025

---

[1] As of December 2025, GSA no longer asks agencies to prepare or submit membership balance plans. *See* 90 Fed. Reg. 58,408, 58,408 (Dec. 16, 2025) (revising 41 C.F.R. Part 102-3 by "removing portions of the regulation that are not required by statute and removing outdated provisions").

memoranda is inapposite. Even if, between 2014 and 2021, the Secretary had not changed the CDC immunization schedule based on recommendations from FDA and NIH officials, Romero Decl. ¶ 20, the Secretary was fully within his authority to do so in 2025, *see supra* pp. 3–4. Similarly, there was no requirement for the Secretary to base his decision on an ACIP recommendation. *See* ECF No. 272, at 22–23; *contra* Romero Decl. ¶ 20. As Defendants have explained, the Secretary "reasonably considered the relevant issues and reasonably explained [his] decision," which is all the APA requires. *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *see* ECF No. 272, at 17–23.

### 3. The Goldman Declaration

Only three paragraphs of the Goldman Declaration address the May 2025 memoranda, Goldman Decl. ¶¶ 11–13, and these fail to show an APA violation for the same reasons as the Havers and Romero Declarations. Dr. Goldman claims that members of the ACIP's COVID-19 Work Group were not consulted about the May 2025 memoranda. *Id.* But regardless of how the COVID-19 Work Group operated in the past, *id.*, the Secretary was not required to consult with Dr. Goldman or other workgroup members before exercising his statutory authority to issue the May Directive, *see supra* pp. 3–4; *Marsh*, 490 U.S. at 378.

### B. The Benjamin, Berman, and Goldman Declarations Do Not Prove Irreparable Harm

The Benjamin and Goldman Declarations unsuccessfully attempt to bolster the claim of irreparable harm to the American Public Health Association, the American College of Physicians, and both organizations' members. As Defendants explained, their previous declarations "reveal[ed] that any future resources used to address developments in federal vaccine policy would be in service of, *not a diversion from*," the organizations' "missions" and therefore could not establish irreparable harm. ECF No. 232, at 39–40. The supplemental declarations are merely

6

more of the same. When APHA considers revisions to manuals it has published for a century or answers members' questions about vaccines, those *are* "public health initiatives" aimed at "infectious disease prevention." Benjamin Decl. ¶ 6. And when ACP staff "review[] available literature, and respond[] to member inquiries on . . . changes to [the] CDC immunization schedule for the Covid-19 vaccine," that *is* "sharing the most updated medical knowledge, offering top-notch educational resources, and providing optimal practice guidelines." Goldman Decl. ¶¶ 4, 14.

Dr. Benjamin's and Dr. Goldman's attempts to articulate irreparable harm to members of APHA and ACP also continue to fail. *See* ECF No. 232, at 41–43 (explaining why "doctor-members" are not irreparably harmed). Their members do not actually "shift resources and staff away from providing care to patients and the public" when they answer "patient and community calls" about vaccines. Benjamin Decl. ¶ 5; *see* Goldman Decl. ¶ 18. Answering such questions *is* part and parcel of providing care to patients and the public. And those members cannot bootstrap their way into irreparable harm through self-inflicted injuries, such as implementing "motivational interviewing training" for staff, Benjamin Decl. ¶ 9, which are "categorically 'not irreparable,'" ECF No. 232, at 42 (quoting *S.F. Real Est. Invs. v. Real Est. Inv. Tr. of Am.*, 692 F.2d 814, 818 (1st Cir. 1982)).

Finally, Dr. Berman's supplemental declaration does not prove that she will suffer irreparable harm. None of the challenged actions forced Dr. Berman "to hire additional practitioners," "materially increase uncompensated labor," or adopt "operational changes that cannot easily be reversed." Berman Decl. ¶¶ 1, 12. The ACIP, CDC, and HHS "have not issued commands" to Dr. Berman or her staff. ECF No. 232, at 41. Dr. Berman remains free to "exercis[e] [her] judgment to act consistent with the standard of care and the law, which [may]

7

mean[] maintaining prior practice under State or professional guidelines," *id.*, so any adjustments to staffing and processes are self-inflicted, *see* ECF No. 232, at 42.

To the extent Dr. Berman and her staff face more questions from "patients and parents," Berman Decl. ¶¶ 6, 12, that hardly constitutes "irreparable harm to the physician," ECF No. 232, at 42. Nor does Dr. Berman explain how a preliminary injunction that temporarily reinstates recommendations that HHS no longer espouses would reduce "instability" or impact "physician-patient trust" in her patient population. Berman Decl. ¶¶ 12, 16. Indeed, one can envision how an "abrupt reclassification" by federal-court order could increase "confusion and distrust" among patients, *id.* ¶ 17, leaving Dr. Berman even worse off. As a last gasp, Dr. Berman speculates about things ACIP might do in the future that could make her practice more difficult. *See id.* ¶¶ 18–20. But the First Circuit is clear that "irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." ECF No. 232, at 42 (quoting *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004)). At bottom, Dr. Berman has not established that she likely will suffer irreparable harm absent preliminary relief.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for leave to file supplemental declarations, as well as Plaintiffs' motion for a preliminary injunction.

March 9, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

JAMES W. HARLOW

8

Acting Assistant Director

*/s/ Isaac C. Belfer*
Isaac C. Belfer (D.C. Bar No. 1014909)
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
(202) 305-7134
(202) 514-8742 (fax)
Isaac.C.Belfer@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that this document, filed through the CM/ECF system, will be sent via electronic mail to the registered participants as identified on the Notice of Electronic Filing.

March 9, 2026                       */s/ Isaac C. Belfer*
                                             Isaac C. Belfer