Docusign Envelope ID: 5CE355DC-114F-45B6-8478-30C65DF75C6C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN ACADEMY OF PEDIATRICS, *et al.*,<br><br>*Plaintiffs,*<br><br>vs.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the Department of Health and Human Services, *et al.*,<br><br>*Defendants.* | Case No. 1:25-cv-11916<br><br>**LEAVE TO FILE GRANTED ON MARCH 13, 2026** |

## SECOND SUPPLEMENTAL DECLARATION OF GEORGES C. BENJAMIN, MD

I, Georges C. Benjamin, MD, declare pursuant to 28 U.S.C. § 1746 that the following is true and correct and within my personal knowledge.

1. I make this declaration based on personal knowledge and if called as a witness, I could and would testify competently to the statements contained herein. I am over the age of 18. I am the Executive Director of the American Public Health Association ("APHA"). I have served in this role since December 2002. I previously submitted a declaration in this matter. I submit this supplemental declaration to update the Court on the ongoing operational harms that APHA and its members are experiencing as a result of the challenged actions, including: (1) the May 19, 2025 Directive issued by Secretary Robert F. Kennedy, Jr., reclassifying pediatric Covid-19 vaccination as "Shared Clinical Decision-Making" ("SCDM") (the "May 19 Directive"); (2) the June, September, and December 2025 ACIP votes (the "ACIP Actions") altering the CDC immunization schedule without adherence to the GRADE and Evidence-to-Recommendation ("EtR") framework that were adopted by the CDC; (3) the January 5, 2026 revised CDC Childhood Immunization

Schedule and accompanying decision documents (the "January 5 Schedule Change"); and, (4) the upcoming March 18-19, 2026 ACIP meeting. These actions continue to inject chaos and confusion into the public health practice provided by APHA and APHA members, forcing APHA and its members into a perpetual crisis-response mode and compelling the diversion of limited resources away from disease prevention to address these challenged actions.

2. The harms to APHA and APHA members described in my prior declarations filed in this matter are ongoing and compounding. Each successive agency action by the Secretary, ACIP, and CDC making changes to the CDC immunization schedule has required (and continues to require) APHA to divert additional resources, destabilized the operational work of APHA's members, and weakened the coordinated national public health system and prevention framework upon which APHA and APHA members depend on for disease prevention strategies, treatment, counseling, and outbreak response. The Secretary's Directive, followed by ACIP and CDC changes to the CDC immunization schedule including the June vote removing thimerosal, the September vote downgrading the Covid-19 vaccine recommendation for essentially all adults to SCDM, the December vote changing the childhood schedule hepatitis B recommendation, and the January 5 Childhood Schedule Change, has (and continues to) disrupt the public health system that APHA and its members rely upon and support through their guidance documents, outreach materials, clinical care, and strategies and response plans for infectious disease control and management.

3. APHA is a national organization representing more than 23,000 public health professionals and affiliated state, local, tribal, and territorial health departments, health organizations, and public-health–focused institutions across the United States. APHA members (including clinicians, epidemiologists, public health officials, public health service providers,

health clinics, nurses, researchers, and emergency preparedness professionals) operate within every level of the nation's public health system and rely on the CDC immunization schedule as national benchmark governing vaccine practice, outbreak prevention, standards of care, and federally mandated reimbursement structures. Because the CDC immunization schedule is embedded throughout the coordinated federal, state, and local public health infrastructure, sudden and unsupported changes disrupt clinical operations, create confusion among providers and patients, undermine trust in vaccine safety and efficacy, and increase the risk of preventable infectious disease outbreaks. Consistent with the harms described in my prior declarations, APHA received additional reports from its members this week describing ongoing operational disruption, uncertainty in vaccine delivery and counseling, and heightened professional and public health risks resulting from each of the May, June, September, December, and January 5 challenged changes to the CDC immunization schedule.

4.      Since the May 19 Directive and subsequent June, September, December, and January 5 changes to the CDC immunization schedule, APHA members across multiple jurisdictions report a sustained and measurable increase in phone calls from healthcare providers, community members, and parents seeking clarification regarding the Secretary, ACIP, and CDC changes to the CDC immunization schedule changes and how to apply the new vaccination recommendations in practice.

5.      For example, APHA members running immunization programs in Texas reported this week that their clinics continue to receive numerous calls from healthcare providers and community members requesting clarification on the May, June, September, December, and January 5 changes to the CDC immunization schedule and how each of these changes to the CDC immunization schedule affect the vaccines the clinic is providing and offering to the public. The

immunization program leadership reports that these calls from healthcare providers and the community to the clinic now require substantially more time per inquiry than similar questions in prior years because staff must explain not only the recommendation itself but also the procedural and scientific irregularities underlying the changes to the CDC immunization schedule, which is complicated by the failure of the Secretary, ACIP, and CDC to follow the evidence to recommendation (EtR) framework prior to making the vaccination recommendation changes to the CDC immunization schedule. APHA members running immunization programs and health clinics report that answering the increase in patient and community calls inquiring about the May, June, September, December, and January 5 changes to the CDC immunization schedule requires them to shift resources and staff away from providing care to patients and the public to respond to the calls. This diversion of clinical staff and public health personnel reduces staff capacity to provide care or for immunization outreach; this reduction in care and prevention capacity cannot later be restored.

6. APHA continues to divert staff time and organizational resources to assess and respond to the consequences of the May 19 Directive, June, September, and December ACIP Actions, and January 5 Schedule Change. For example:

a. As a direct result of the Secretary's May Directive, the June, September, and December ACIP votes changing the CDC immunization schedule recommendations for thimerosal containing influenza vaccines, Covid-19 vaccines, and Hepatitis-B vaccines, and the January 5 Childhood Schedule Changes, APHA continues to divert substantial organization resources to unplanned revisions of its flagship infectious-disease publications, including the Control of Communicable Diseases Manual, which APHA has published for over a century, and its companion, Control of Communicable Diseases: Clinical Practice. These volumes are relied on

4

by APHA members (including state and local health departments, epidemiologists, public health practitioners, and clinicians) nationwide and their content is built around the evidence-based immunization framework historically produced through the CDC and ACIP evidence-based review process. As a result of each of the Secretary, ACIP, and CDC's actions (in May, June, September, December, and January 5) that depart from the established GRADE and EtR evidence review framework and created new confusion about the basis for the changes to the CDC immunization schedule recommendations, APHA has (and continues to have to) reconvene its editorial contributors, reassess affected chapters, and update the guidance to reconcile the scientific evidence with the Secretary, ACIP, and CDC's changes to the CDC immunization schedule. This work requires the reallocation of APHA staff time, editorial ownership, and expert contributors away from other public health priorities that APHA would otherwise be pursuing. These are compelled and ongoing diversion of resources that APHA would not have undertaken but for these May, June, December, September, December, and January 5 actions by the Secretary, ACIP, and CDC that each made changes to the CDC immunization schedule recommendations without following the evidence-based EtR process.

     b. APHA members rely on the GRADE and EtR analyses to understand the scientific basis, strength, and scope of the CDC immunization schedule recommendations. Without those analyses, APHA members (including clinicians, public health practitioners, health clinics, and public health officials) lack the methodological foundation necessary to interpret and explain the changes accurately to their patients and community. The failure of the Secretary, CDC, and ACIP to follow the established evidence-based framework prior to making changes to the CDC immunization schedule in May, June, September, December, and January 5 has therefore required

APHA to expend additional resources filling explanatory gaps for APHA members that should have been addressed through the ordinary federal process.

    c. I, along with other APHA senior scientific staff, policy analysts, and communications professionals have been forced to divert our time away from APHA planned public health initiatives (including infectious disease prevention campaigns, monitoring, and response planning) to respond to APHA members and the public on questions related to how to interpret and apply the Secretary, ACIP, and CDC changes in May, June, September, December, and January 5 to the CDC immunization schedule. Specifically, APHA has convened emergency internal meetings, hosted member calls, issued clarifying advisories, and developed explanatory materials to address confusion created by May Directive, ACIP June, September, and December Actions, and January 5 Schedule Change.

    d. APHA continues to have to divert staff time and institutional resources to assess and respond to the operational consequences of the June ACIP vote, which occurred against the backdrop of longstanding scientific consensus that thimerosal, a preservative containing ethylmercury, is safe and not associated with autism. After the June ACIP vote, APHA became aware that CDC website materials continued to state that thimerosal is safe, while other federal communications surrounding the vote suggested renewed concern. This conflicting federal messaging created confusion among APHA public health practitioner members in the field. In response, APHA staff continue to have to divert their time away from other necessary public health initiatives to review federal materials for inconsistencies on influenza vaccines and prepare responses to member inquiries regarding the June ACIP vote on thimerosal containing influenza vaccines.

e. APHA continues to divert APHA staff time away from necessary public health initiatives to develop public communications and education materials to counter the ongoing widespread confusion caused by the May Directive and September ACIP vote downgrading the Covid-19 vaccine to SCDM. APHA staff field inquiries from APHA members seeking guidance on now to navigate the conflicting and unexplained actions by the Secretary, ACIP, and CDC and coordinating with other public health administrators throughout the country on Covid-19 vaccine guidance to address the changes to the CDC immunization schedule. These efforts are essential to mitigate the ongoing harm, and they represent a continued unplanned burden for APHA. APHA has also continued to have to divert resources to publish materials and statements to APHA members and the public on the safety and efficacy of the Covid-19 vaccine as a direct result of the Secretary's Directive and ACIP's change to the Covid-19 vaccine recommendation to SCDM.

7. APHA's long-standing role as a reliable disseminator of evidence-based public health guidance has been undermined by the Secretary, ACIP, and CDC's unexplained changes to the CDC immunization schedule. APHA's ability to carry out its mission depends on the trust placed in it by the public health professionals, policymakers, and the communities they serve. For decades, APHA's recommendations and educational materials have been grounded in the transparent, evidence-based federal vaccine review framework established by ACIP and the CDC. The Secretary's Directive and ACIP and CDC's abrupt departure from that evidence based EtR review framework have directly undermined APHA's reputation as a reliable conduit of authoritative, evidence-based public health guidance. APHA has had to expend additional resources addressing questions from partners and members on APHA materials on Covid-19 vaccination, Hepatitis B vaccination, and influenza vaccination, that contradict these sudden, unexplained federal cations. The new doubt in APHA guidance caused directly by the Secretary,

ACIP, and CDC unfounded changes to the CDC immunization schedule erodes APHA's standing in the public health community, weakens perceived reliability of its communications, and diminishes the effectiveness of its educational initiatives. APHA continues to have to expend additional resources to rebuild credibility with APHA members and the public, which are resources that would otherwise be directed toward advancing necessary core public health priorities. This loss of trust and impairment of APHA's reputation directly obstructs APHA's ability to fulfill its mission and educate, coordinate, and lead national public health efforts.

8. APHA members continue to report that the May Directive and September ACIP and CDC change from the routine recommendation for Covid-19 vaccination to SCDM has required APHA members to update standing orders, review patient educational materials, change staffing models, and incorporate additional time into clinicians' schedules for the SCDM discussions on Covid-19 vaccinations with their patients. For example, APHA members who run metropolitan health clinics reported this week that their health clinics have to change staffing models to ensure the practitioners are staffed correctly each shift to engage in the SCDM discussions for Covid-19 vaccines. An APHA member health clinic previously relied on licensed practical nurses ("LPNs") for routine vaccine counseling; now the health clinic must staff and schedule LPNs with registered nurses or physicians to engage in the SCDM discussions with the clinic's patients to comply with the changes to the CDC immunization schedule recommendations that now require SCDM for Covid-19 vaccines.

9. An APHA member that operates mobile public health services and mobile health clinics reported this week that it is experiencing a measurable increase in vaccine hesitancy for influenza and hepatitis B following the challenged CDC and ACIP actions changing the recommendations for influenza vaccines (in June) and hepatitis B (in December and January 5).

This APHA mobile public health service provider and clinic member further reported these additional alterations to its allocation of time and resources to respond to the CDC and ACIP actions:

 a. As a direct result of increased hesitancy attributable to these June, December, and January 5 changes to the CDC immunization schedule recommendations for influenza vaccination and Hepatitis B vaccination, the APHA member clinic has implemented mandatory motivational interviewing training for all registered nurses to address patient resistance and confusion. This training has increased staff training and labor costs by approximately two additional hours per registered nurse per year.

 b. The APHA member clinic has also developed and incorporated a structured motivational interviewing process into routine patient encounters. As a result, each patient encounter involving vaccination now requires approximately three additional minutes of counseling time.

 c. Despite this increased counseling time and labor investment, the APHA member clinic receives fewer billable vaccine administration fees per patient because vaccine uptake has declined following the changes to the CDC immunization schedule. The mobile clinic has therefore incurred increased labor costs as a result of the changes to the CDC immunization schedule while simultaneously experiencing decreased vaccine administration revenue.

 d. The APHA member clinic has also had to redesign its public-facing website to remove references to prior CDC immunization schedules and replace outdated links to CDC webpages that no longer reflect longstanding evidence-based guidance.

 e. In addition, the APHA clinic has been required to revise its standing orders to remove references to the prior CDC schedule language and to incorporate the SCDM

terminology used in the May Directive, September ACIP vote, and January 5 Schedule Change. Revising these standing orders required substantial leadership and staff labor hours, including administrative review, clinical sign-off, retraining of nursing staff, and electronic medical record updates.

        f.    The APHA member clinic reports that these operational burdens and financial costs would not have occurred but for the May Directive, the June ACIP vote on influenza vaccines containing thimerosal, the September ACIP vote on Covid-19 vaccine, the December ACIP vote on Hepatitis B, and the January 5 Childhood Schedule Change; and these harms are compounding and ongoing. Increased counseling time, staff retraining, staffing model changes, protocol revisions, and revenue loss to the APHA member clinics continues as long as instability and confusion in the May, June, September, December, and January 5 CDC immunization schedule recommendations persist.

10. APHA members continue to report that following the June ACIP vote, they have experienced increased patient questions regarding flu vaccine safety. For example, APHA members have reported modifying flu vaccine messaging campaigns to rebuild confidence and address confusion generated by the June ACIP vote removing thimerosal from influenza vaccines. These changes to messaging campaigns and outreach materials require additional staff time, printing and communications expenses, and expanded community engagement efforts by APHA members. Increased counseling time by clinic staff on the changes to the CDC immunization schedule recommendations for influenza vaccines directly affect APHA members' clinic workflow, patient throughput, and staffing allocation.

11. The December ACIP hepatitis B vote and January 5 Schedule change have destabilized universal birth-dose prevention strategy that APHA and APHA members have

10

implemented across the public health system nationwide and supported through outreach materials, guidance, counseling, and public health campaigns. APHA members report increased parental refusal of hepatitis B vaccination in birthing hospitals citing December ACIP change and January 5 Childhood Schedule change for hepatitis B vaccination. Universal birth-dose vaccination was adopted because screening-only approaches previously failed in the United States' fragmented healthcare system. That structural reality remains unchanged. Once a newborn leaves a hospital unvaccinated, the prevention opportunity may be lost permanently. Chronic hepatitis B infection carries lifelong increased risk of cirrhosis and hepatocellular carcinoma. APHA and APHA members continue to have to shift resources and staff time to respond to inquiries related to the December ACIP and January 5 changes to the childhood schedule recommendation for hepatitis B vaccination and prepare new outreach materials, strategies for hepatitis B public health awareness and prevention campaigns, and coordinate with public health practitioners across the country to execute the new campaigns. For example, APHA members running maternal child health programs report that as a result of the December ACIP vote and January 5 Childhood Schedule Change for the hepatitis B recommendation, they are shifting their staff members' time and the program's limited resources away from other necessary maternal health initiatives so that the program's staff can spend more time counseling women on the risk of not getting vaccinated for hepatitis B and developing post-delivery programs for the women who are now choosing to forgo hepatitis B vaccination.

12. The next ACIP meeting has been rescheduled for March 18-19, 2016. The March 18-19 ACIP Meeting is imminent, and is causing operational disruption to APHA and APHA members. APHA is preparing contingency communications and internal briefings in anticipation of additional destabilizing actions by ACIP that may make additional changes to the CDC

immunization schedule without following the relied upon evidence-based GRADE and EtR process. APHA members report delaying vaccine procurement and planning decisions pending potential additional changes to the CDC immunization schedule at the March 18-19 ACIP Meeting. Even absent a specific vote, statements made during the ACIP proceeding include vaccine confidence immediately. Each additional meeting and change to the CDC immunization schedule conducted without adherence to the established evidence-based GRADE and EtR framework compounds instability in the CDC immunization schedule recommendations that are embedded in APHA and APHA member guidance, protocols, standing orders, and operations, which APHA and APHA members must address and respond to immediately. Permitting the March 18-19 ACIP Meeting to proceed under these circumstances will cause immediate, concrete, and ongoing harm to APHA and APHA members by further destabilizing the CDC immunization schedule recommendations that are embedded in the nation's public health system and the protocols, disease prevention strategies, outbreak response plans, counseling provided by APHA and APHA members.

13. The harms described here resulting from the Secretary, ACIP, and CDC changes to the CDC immunization schedule (in May, June, September, December, and January 5) are ongoing and cannot later be remedied in the normal course of APHA's operations or recovered. APHA has diverted staff time and financial resources away from its mission-critical public health initiatives to respond to each of the Secretary's, ACIP's, and CDC's May, June, September, December, and January 5 changes to the CDC immunization schedule that each bypassed the evidence-based EtR framework it and its members rely on to understand and then implement the changes across the nation's public health system. APHA members have incurred increased labor costs, reduced vaccine administration revenue, expanded training obligations, website redesign expenses, and

substantial standing-order revision burdens as a result of the Secretary, ACIP, and CDC May, June, September, December, and January 5 changes to the CDC immunization schedule. APHA members have also experienced increased patient counseling time and reduced vaccination uptake as a result of these challenged changes to the CDC immunization schedule. Preventable infectious disease does not pause while litigation proceeds. Missed vaccinations, reduced herd-immunity thresholds, and the avoidable infections that result cannot be restored retroactively. These all threaten the individuals served by APHA members as well as the general public. Absent emergency relief, APHA and APHA members will remain in sustained crisis-response mode, sustaining ongoing injury to their missions and to the public health infrastructure they serve.

I declare under penalty of perjury and laws of the United States, including 28 U.S.C.§ 1746, and the laws of Washington D.C., that the foregoing is true and correct. Executed on March 1, 2026, in Washington, D.C.

_____
Georges C. Benjamin, MD
Executive Director, American Public Health Association

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the court's Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on March 13, 2026.

                                               */s/ James J. Oh*
                                               James J. Oh