**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMERICAN ACADEMY OF PEDIATRICS, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:25-cv-11916-BEM |
| ROBERT F. KENNEDY, JR., *et al.*, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**DEFENDANTS' RENEWED MOTION TO STAY PROCEEDINGS PENDING
APPEAL AND TO POSTPONE RECORD DISPUTES**

**REQUEST FOR ORAL ARGUMENT**

Defendants respectfully request the opportunity to present oral argument on this Motion.

**INTRODUCTION**

When the Court previously denied a stay on May 1, it did so based on the government's submissions at that time. Two things have changed since. First, the First Circuit has granted expedited review of Defendants' appeal (which is limited to Count II), so the Circuit's decision is no longer a distant prospect but a near-term proposition. Second, the issues have crystallized: the government's opening brief, now filed, frames questions about whether the Advisory Committee on Immunization Practices ("ACIP") appointments are reviewable, under what standard, and what remedy is appropriate—issues on which further proceedings in this Court depend.

These developments make a stay the efficient course, however the appeal is resolved: any outcome—on standing, finality, the standard of review, or remedy—either ends Count II or fixes the terms on which it proceeds. Moreover, given the overlap between Plaintiffs' Federal Advisory Committee Act of 1972 ("FACA") claim and their other claims, the First Circuit's resolution of Defendants' appeal could broadly impact proceedings before this Court. Forging ahead with the district court litigation would require the parties to brief and the Court to resolve record disputes and summary judgment motions on issues that the First Circuit's decision may moot or provide guidance on, potentially requiring the parties to redo briefing after the Circuit's decision.

A stay also costs Plaintiffs nothing. The government appealed only the FACA-based Count II relief, so the January 5, 2026, Memorandum and the challenged ACIP votes will continue to be stayed, and the pre-January 5 vaccination schedules remain in place. As Plaintiffs themselves have acknowledged, it is the preliminary relief, not the continuation of district-court litigation, that protects them from any asserted harm. And Defendants have already produced administrative

records for all the challenged actions, including the underlying decision memoranda. What a stay defers is not production of the administrative records but litigation over Plaintiffs' demands to expand those records.

Defendants do not seek delay. They moved to expedite the appeal (over Plaintiffs' objection), shortening only their own deadlines, and the First Circuit granted that request. The public interest lies in resolving controlling legal questions quickly and once, through the expedited appeal, rather than litigating related questions on two fronts in parallel. A stay of proceedings pending the expedited appeal is the most direct route to the orderly and prompt resolution of this case. In the alternative, the Court should stay proceedings at least as to Count II. And at a minimum, the Court should postpone any record disputes until this Motion is resolved.

## BACKGROUND

### A. The Preliminary-Relief Order

On March 16, 2026, the Court granted in part Plaintiffs' motion for preliminary relief. As relevant here, it stayed the appointments of thirteen of the ACIP's fifteen members, the reconstituted committee's votes, and the January 5 Decision Memo, and held that the CDC Director may not alter the immunization schedule without the ACIP's involvement. ECF No. 291, at 15 & n.31, 45. The stay of the January 5 Memo rested on independent arbitrary-and-capricious grounds, while the stay of the appointments rested on the Court's FACA ruling on Count II. *Id.* at 14–22, 44–45.

### B. Defendants' Motion to Stay Proceedings, and the Court's Order

Defendants moved on April 23 to stay further proceedings pending appeal. ECF No. 304. The motion argued that the appeal "could narrow the issues in dispute and provide guidance on how to resolve any remaining issues," so that proceeding to compile administrative records and brief summary judgment before the appeal was resolved risked "wasted time and resources." *Id.*

at 1. Defendants explained there was no prejudice to Plaintiffs: "A stay of proceedings would not harm Plaintiffs because Defendants do not seek to stay the Court's preliminary relief order, and that order remains in full effect and continues to protect Plaintiffs against any irreparable harm." ECF No. 309, at 6 (quoting Defendants' correspondence).

Plaintiffs opposed. ECF No. 309. They urged that "this case must reach an adjudication of the merits as soon as possible." *Id.* at 1. They did not identify any harm a stay of proceedings would cause but instead acknowledged that the preliminary relief "remains in full effect and continues to protect Plaintiffs against any irreparable harm." *Id.* at 6. The appeal was beside the point. The notion that it "could narrow the issues in dispute," they wrote, rested on "dubious propositions," because "[t]he First Circuit cannot narrow—i.e., dismiss—any of the claims." *Id.* at 8. "Judicial economy," they argued, "will be better served by continuing with the proceedings before this Court while an appeal is pending." *Id.*

On May 1, the Court declined to stay proceedings, explaining that Defendants bore the burden of showing good cause and that their submissions at the time had not carried it. *See* ECF No. 311 (citing *Marquis v. FDIC*, 965 F.2d 1148, 1155 (1st Cir. 1992); *Contour Design, Inc. v. Chance Mold Steel Co.*, 649 F.3d 31, 34 (1st Cir. 2011)). The Court did not hold that a stay could never be warranted, only that Defendants had not then shown good cause.

### C.  The Appeal and the Motion to Expedite

Defendants noticed their appeal on April 29. ECF No. 306. On June 12, Defendants moved to expedite the appeal, proposing a schedule that shortened only Defendants' own briefing deadlines. Ex. A. The motion explained that the order "stays thirteen of the committee's fifteen appointments, leaving the ACIP without a quorum," so that "the committee cannot supply, change, or withdraw a vaccine recommendation—for any vaccine or population—until the stay is lifted," and that the appeal presented the question of "whether the appointments are final agency action,"

3

which "may dispose of the appeal." *Id.* at 1, 5.

Plaintiffs opposed expedition on June 15, abandoning the urgency they had pressed weeks before in this Court. While Plaintiffs argued in this Court that this case "must reach an adjudication of the merits as soon as possible," ECF No. 309, at 1, they changed their tune in the First Circuit, arguing that "ordinary appellate review [was] fully adequate," Ex. B at 11. They noted there would be no harm in the meantime because "existing schedules remain in place." *Id.* at 9. Similarly, whereas Plaintiffs argued to this Court that Defendants' appeal "cannot narrow—i.e., dismiss— any of the claims," ECF No. 309, at 8, they conceded to the First Circuit that the appeal presented issues of "standing, final agency action, the scope of FACA review, and remedy," Ex. B at 5, threshold matters that might dispose of Count II or at least guide future proceedings on the claim.

The First Circuit expedited the appeal the next day. Ex. C. It directed that briefing be completed by July and that "[o]ral argument, to the extent deemed necessary, will be scheduled as soon as practicable after the completion of briefing," with the matter to "be resolved without undue delay." *Id.*

### D. Defendants' Opening Brief

Defendants filed their opening brief the day after, on June 17. The brief presents three principal issues. First, justiciability: "whether plaintiffs have Article III standing to challenge advisory committee appointments" and "whether such appointments constitute 'final agency action'" reviewable under the APA. Ex. D, Statement of the Issues. Second, standard of review: "[w]hether the district court applied the correct standard of review to the FACA fair-balance claim." *Id.* Third, remedy: whether "staying thirteen appointments, leaving the committee unable to convene, and conditioning any schedule change on ACIP involvement" was appropriate. *Id.*

The brief is explicit about the appeal's limited scope and its consequences. The government "challenges the FACA-based structural relief only" and "does not seek to disturb the stay of the

4

January 5 Memo, which rests on independent grounds," nor "the interim stay of the three adopted votes," and "the pre–January 5 immunization schedule remains in effect." *Id.* at 1, 5. The brief also describes what reversal would yield: "the stay of the thirteen appointments lifts, the Secretary can rebalance the ACIP, and the ACIP can reconvene," while the other relief stands and "[n]othing changes for patients or providers in the interim." *Id.* at 53–54.

## LEGAL STANDARD

An order denying a stay is interlocutory and "may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). The Court therefore may revisit its May 1 order due to changed circumstances. The breadth of the Court's discretion runs both ways: the same authority that supported declining a stay on the May record supports granting one now, on a materially different record.

A district court has inherent authority to stay proceedings "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Clinton v. Jones*, 520 U.S. 681, 706 (1997). A stay decision is reviewed for abuse of discretion. *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004). That discretion is broad, but not unbounded. A stay must rest on "good cause," be "reasonable in duration," and reflect a balance of "competing equities," which the Court "must ensure . . . are weighed and balanced." *Marquis*, 965 F.2d at 1155.

## ARGUMENT

### I.    Changed circumstances warrant reconsideration.

On June 16, 2026, after this Court denied Defendants' original stay motion, the First Circuit expedited Defendants' appeal and directed that argument be heard as soon as practicable after briefing closes in July, with a decision to follow without undue delay. Ex. C. Whereas in May, this

5

Court declined to enter an open-ended stay pending an appeal to be resolved in the ordinary course, the First Circuit's June expedition order ensures that a stay pending appeal would be "reasonable in duration," *Marquis*, 965 F.2d at 1155, likely measured in months (at most).

The remaining considerations have also shifted. When this Court ruled on Defendants' original stay motion, the scope of Defendants' just-noticed appeal was not yet known. Defendants have since filed their opening brief, which squarely frames the questions on appeal: whether the appointments are reviewable, under what standard, and what remedy is appropriate. The prospect that animated Defendants' original motion—that an appellate decision "could narrow the issues in dispute and provide guidance on how to resolve any remaining issues," ECF No. 304, at 1—is now concrete and imminent, not speculative. In similar circumstances, district courts have stayed proceedings pending an expedited appeal of preliminary relief where the appeal's resolution could guide further district court proceedings. *See, e.g.*, *San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*, No. 2:24-CV-06854-SPG-AS, 2025 WL 2092809 (C.D. Cal. June 18, 2025); *Oregon v. Azar*, No. 6:19-CV-00317-MC, 2019 WL 9045195 (D. Or. Sept. 17, 2019).

Rule 54(b) permits the Court to account for these changes. This is not a request to revisit a settled question on the past record, but to weigh the equities on the current one. Even if there were not good cause for a stay of proceedings in May, the intervening developments in Defendants' appeal establish good cause for a brief stay of proceedings.

## II.    However the appeal is resolved, a stay would be efficient.

Defendants' appeal presents questions that govern proceedings on Count II in this Court: reviewability, standard of review, and remedy. The First Circuit's decision could require Count II to be dismissed, but even if not, the decision will fix the standard of review for a fair-balance claim under FACA, the scope of the record disputes the parties must litigate, and the framework for any summary-judgment briefing.

The stakes for the record on Count II are clear. Defendants have produced the administrative record, including the underlying decision memoranda. Fair-balance review in some circuits has been confined to the face of the committee's membership. That inquiry requires little more than the charter, the roster, and members' affiliations. *See, e.g.*, *Public Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*, 886 F.2d 419 (D.C. Cir. 1989) (fractured panel). Under the more searching review Plaintiffs now seek, Plaintiffs could attempt to obtain extra-record discovery. That expansive review heightens separation-of-powers concerns.[1] Under one standard, the produced record is sufficient. Under another, each of Plaintiffs' attempts to expand the record must be litigated. The First Circuit is about to say which.

Plaintiffs' prior refrain that "[t]he First Circuit cannot narrow—i.e., dismiss—any of the claims," ECF No. 309, at 8, is a technicality, not an answer. However the appeal comes out, the Circuit's decision will inform what happens next in this Court:

- If the First Circuit holds that Plaintiffs lack Article III standing to challenge the appointments, that defect is jurisdictional and requires dismissal of Count II.

- If it holds that the appointments are not final agency action, Count II fails as a matter of law, and a dismissal naturally follows on remand.

- If it holds that this Court applied the wrong standard, that holding will govern the standard under which Count II is adjudicated, and in turn, could affect resolution of record disputes.

---

[1]    *See Cheney v. U.S. District Court*, 542 U.S. 367 (2004). The plaintiffs there alleged that the National Energy Policy Development Group, formed by the President and chaired by the Vice President, had not complied with FACA's open-meeting and disclosure requirements, and the district court approved sweeping discovery to determine whether FACA applied at all. The Supreme Court held that the court of appeals erred in refusing to intervene, explaining that "special considerations" govern civil discovery directed at senior Executive Branch officials, that the Executive's constitutional responsibilities and status are factors counseling judicial deference and restraint in litigation against it, and that FACA's statutory objectives—however important—could not justify discovery whose only purpose was to make it easier for private complainants to vindicate them, 542 U.S. at 384–90. The concern increasingly maps onto Plaintiffs' growing disclosure demands, which would train civil discovery on the Secretary's committee-selection deliberations themselves when no such disclosure may be needed to adjudicate their claims.

- Even a narrow ruling confined to the remedy could fix the boundaries of permissible relief and reshape what is left to litigate.

The First Circuit thus need not enter a "dismiss[al]" for its decision to be dispositive of Count II—or, at the least, controlling of future proceedings on Count II. Plaintiffs' suggestion that the appeal changes nothing cannot be reconciled with their own representation to the First Circuit that the appeal presents "standing, final agency action, the scope of FACA review, and remedy" issues. Ex. B at 5. Those are not minor issues but core questions on which Count II rises or falls.

Nor can the appeal's effects be tightly confined to Count II. Count I, for example, turns on whether the CDC Director may act on the immunization schedule apart from the ACIP. This is a question about the ACIP's role in the statutory scheme and where legal consequences attach within it. The preliminary-relief order answered that question by reasoning from statutes that reference the ACIP's recommendations. ECF No. 291, at 14–16 & n.31. The appeal examines the same statutory architecture through the lens of finality and the standard of review. Summary-judgment briefing on Count I would therefore require this Court to construe the ACIP's role at the very moment the First Circuit is construing it. Additionally, Plaintiffs' challenges to the reconstituted ACIP's votes overlap with their FACA claim. *See, e.g.*, ECF No. 291 at 43–45 (staying ACIP votes on the grounds that the ACIP was improperly constituted).

The expedited briefing will also clarify what this Court must decide. Plaintiffs' responsive appellate brief, due within ten days, will commit them to positions on whether the appointments are final agency action and what standard governs fair-balance review. Any record disputes are best resolved after Plaintiffs have committed to legal theories in their appellate brief, rather than while those theories remain a moving target. And depending on the First Circuit's ruling, the government may evaluate whether to seek voluntary remand for further agency proceedings.

8

**III.    In the alternative, the Court should stay proceedings on Count II, or at least postpone briefing on Count II record disputes until this Motion is resolved.**

If the Court is not inclined to stay all proceedings, it should at least stay proceedings on Count II. The overlap with the appeal is direct and apparent: Count II is the claim on appeal, and its reviewability, governing standard, any related record disputes, and remedy all relate to questions now before the First Circuit.

At a minimum, the Court should defer briefing on record disputes until it resolves this Motion. Although the Court undoubtedly has authority to take up those issues now, a brief deferral is warranted because the parties' positions on record issues involve questions on appeal, including the standard of review. Plaintiffs themselves described these issues as "not as clean or severable" as the government suggests. Ex. B at 10–11. Taking Plaintiffs at their word, the record disputes should be decided once, not piecemeal. A brief deferral costs nothing and may spare the Court from issuing rulings that the First Circuit's forthcoming decision could unsettle.

**IV.    Plaintiffs' professed equities have shifted with the forum.**

Plaintiffs' prior opposition to a stay rested on the urgency of reaching the merits. To defeat a stay in this Court, Plaintiffs claimed this case "must reach an adjudication of the merits as soon as possible" and that Defendants' appeal was a "delay tactic[]." ECF No. 309, at 1. Yet to defeat expedition of that same appeal in the First Circuit, Plaintiffs maintained that "ordinary appellate review is fully adequate," that "existing schedules remain in place" so nothing would be lost by waiting, and that Defendants' request for prompt review reflected "a contrived, manufactured sense of urgency." Ex. B at 1, 9, 11. Plaintiffs minimized the appeal here, telling this Court it "cannot narrow . . . any of the claims," and then told the First Circuit the appeal presents the dispositive questions of "standing, final agency action, the scope of FACA review, and remedy." *Id.* at 5; ECF No. 309, at 8.

9

As Part II explains, Plaintiffs correctly told the First Circuit the appeal is consequential. Any competing characterizations in this Court to resist a stay should be weighed against what they told the First Circuit. And on the question of speed, it is Plaintiffs—who opposed expediting the appeal—who have resisted the fastest path to resolving these questions, not Defendants.

**V.  A stay imposes no cognizable harm on Plaintiffs or anyone else.**

The government's narrow appeal challenges only the FACA-based Count II relief. The government has not appealed the stay of the January 5 Memo, which rests on independent grounds, or the stay of the three challenged votes. Those stays remain in effect, and the pre-January 5 immunization schedule remains in place. Pausing the merits and record proceedings puts nothing Plaintiffs obtained from the preliminary-relief order at risk.

Plaintiffs have not disputed the point. In opposing the first stay motion, they noted that the preliminary relief "remains in full effect and continues to protect Plaintiffs against any irreparable harm." ECF No. 309, at 6. The requested stay leaves that protection untouched. A stay also would not disserve the public interest: it leaves the existing schedules and this Court's preliminary relief in place and spares everyone the waste of litigating a claim that may be dismissed or whose standard of review may be set by the First Circuit's forthcoming decision.[2]

---

[2]  While "[a]n appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending," *Contour Design*, 649 F.3d at 34, the appeal places the propriety and scope of the Count II relief and the standard of review for Count II before the First Circuit. Going forward on overlapping questions concurrently might require this Court to decide, issue by issue, what it may address without trenching on that appeal. A modest stay pending the expedited appeal avoids that line-drawing altogether.

**CONCLUSION**

The Court should stay all further proceedings pending the First Circuit's decision, or alternatively, stay proceedings on Count II. At a minimum, the Court should postpone record disputes until this Motion is resolved.

July 7, 2026                                              Respectfully submitted,

                                                         STANLEY E. WOODWARD, JR.
                                                         Associate Attorney General

                                                         */s/ Matthew C. Zorn*
                                                         MATTHEW C. ZORN
                                                         Senior Counsel to the
                                                            Associate Attorney General
                                                         U.S. Department of Justice
                                                         950 Pennsylvania Avenue NW
                                                         Washington, DC 20530


                                                         BRETT A. SHUMATE
                                                         Assistant Attorney General

                                                         ERIC J. HAMILTON
                                                         Deputy Assistant Attorney General

                                                         JAMES W. HARLOW
                                                         Acting Assistant Director

                                                         ISAAC C. BELFER (D.C. Bar No. 1014909)
                                                         Trial Attorney
                                                         Federal Programs Branch
                                                         Civil Division
                                                         U.S. Department of Justice
                                                         1100 L Street, NW
                                                         Washington, DC 20005
                                                         (202) 305-7134
                                                         (202) 514-8742 (fax)
                                                         Isaac.C.Belfer@usdoj.gov

                                                         *Counsel for Defendants*

## LOCAL RULE 7.1 CERTIFICATE

As noted in the June 24, 2026, status report, ECF No. 322, at 4, Defendants conferred with

Plaintiffs, who oppose this Motion.

*/s/ Matthew C. Zorn* _____
Matthew C. Zorn

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the CM/ECF system, will be sent via electronic mail to the registered participants as identified on the Notice of Electronic Filing.


July 7, 2026                              */s/ Matthew C. Zorn*_____
                                         Matthew C. Zorn